NORA FRIMANN, City Attorney (93249)
ARDELL JOHNSON, Assistant City Attorney (95340)
ELISA T. TOLENTINO, Chief Deputy City Attorney (245962)
THOMAS J. GRAY, Sr. Deputy City Attorney (191411)
NICHOLAS E. SYMPSON, Sr. Deputy City Attorney (295535)
STEPHANIE DAVIN, Deputy City Attorney (307911)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address:  cao.main@sanjoseca.gov

Attorneys for CITY OF SAN JOSE

SUPERIOR COURT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIA WASTE SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SAN JOSE, and DOES 1 to 50, inclusive, <br><br> Defendants. | Case Number:  3:23-cv-01647-MMC <br><br> **DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date: December 12, 2025 <br> Time: 9:00 a.m. <br> Courtroom: 7, 19th Floor, San Francisco <br> Judge: Hon.  Maxine M. Chesney |

**DECLARATION OF VALERIE OSMOND**

I, Valerie Osmond, declare as follows:

1.  I am currently a Deputy Director for the Environmental Services Department ("ESD") for

the City of San José ("City"). I have held this position since 2018. I oversee the Integrated

1

DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Case Number: 23-cv-01647-MMC

2260165

Waste Management ("IWM") division of ESD. IWM's functions include management of the City's garbage and recycling contracts for residential and commercial properties. I have personal knowledge of each of the facts stated in this declaration.

2. The city is divided into three service districts for residential garbage and recycling services. California Waste Solutions ("CWS") provides recycling services for single-family homes in Districts A and C. GreenTeam provides recycling services for single-family homes in District B and for all multi-family homes in the city.

3. In December 2011, the City and CWS entered into a contract for a term of July 1, 2010 to June 30, 2021. After unsuccessful negotiations of an extension of CWS's contract, in January 2019, ESD and the City Manager's Office recommended that the City cease negotiations with CWS and issue a Request for Proposals for recycling collection and processing services for Districts A and C.

4. The staff recommendation was based on the significant increase in compensation sought by CWS, concerns about CWS's performance under the existing contract, and customer complaints.

5. The City Council rejected the staff recommendation and directed further negotiations for another 30 days. The Council authorized staff to negotiate an extension that would pay CWS up to an amount that would match GreenTeam's per-household rate for service.

6. In June 2019, the City and CWS agreed to a Second Amendment to the Contract. The Second Amendment included a performance evaluation period from July 1, 2019 through June 30, 2020. If, following the competition of this performance evaluation period, CWS had satisfied performance standards, CWS and the City would enter into a new agreement for recycling services effective July 1, 2021 through June 30, 2036.

7. If CWS had not satisfied performance standards during this performance evaluation period, the City would have issued a request for proposals for recycling services in Districts A and C. CWS would not have been disqualified from submitting a bid.

8. The Second Amendment also changed the circumstances under which CWS could issue NCNs, changed how diversion is measured and the disincentives for not meeting diversion

2

DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Case Number: 23-cv-01647-MMC

2260165

targets, implement customer satisfaction standards, assign outreach and education functions to the City, and develop a "safety net" for changes in the recycling market.

9. CWS raised concerns about China's "National Sword" policy and its effect on CWS's ability to sell recyclable materials. In response to CWS's concerns, the City Council adopted a resolution authorizing the waiver of certain diversion disincentives. Following this resolution, ESD waived $262,562.08 in diversion disincentives for CWS.

10. In 2022, the City conducted a pilot program for larger garbage carts. Approximately 4,200 single-family homes along five recycling routes were offered a 96-gallon garbage cart at no additional charge to test whether a larger garbage cart reduces recycling contamination. Although contamination was reduced, given four out of the five routes sampled continued to average over 50% contamination, the study was inconclusive. In 2024, the study was expanded to approximately 4,300 additional households, to increase the study size. The contamination remained above the average level of contamination for three of the five routes sampled. This study of approximately 8,500 single-family households ended in 2025, producing inconclusive results. The cost to the City of conducting these pilot programs was approximately $960,000.

11. The IWM group strives to maintain good working relationships with each of its contractors. IWM applies the terms of each of its contracts fairly and consistently. None of the actions taken by IWM in managing its contracts were motivated by, or based on, the race of any contractor.

12. The GreenTeam contract for 2010-2021 provided for the assessment of liquidated damages in the event GreenTeam did not achieve its required diversion rate. IWM calculated GreenTeam's diversion rate according to its contract and assessed liquidated damages when warranted. For example, in December 2019, GreenTeam missed its diversion target by 0.01%, and the City assessed it $10,000 in liquidated damages.

13. In July 2021, the City and CWS entered into an Amended and Restated Agreement with a term from July 1, 2021 to June 30, 2036. This restated agreement provides for a waste characterization study to be performed every other year. CWS's compensation for the

3

DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Case Number: 23-cv-01647-MMC

2260165

following two years is based in part on the results of the waste characterization study, with CWS receiving greater compensation following a study showing higher contamination rates.

14. The waste characterization study performed in 2020 identified a citywide contamination rate of 51%, and contamination rates of 55% and 48.7% in Districts A and C, respectively.

15. The waste characterization study performed in 2022 identified a citywide contamination rate of 56.8% and contamination rates of 56.8% and 47.2% in Districts A and C, respectively. These high rates are partially attributed to shelter-in-place and remote work policies in place during the COVID-19 pandemic.

16. The waste characterization study performed in the fall of 2024 revealed a lower rate of contamination. The study identified a citywide contamination rate of 40.8% and contamination rates of 46.4% and 37.8% in Districts A and C, respectively. Although CWS participated in the selection of the consultant performing the study and approved the consultant's methodology, after receiving the results of the study, CWS expressed concerns about the study and has requested that the City perform another study, at CWS's cost, using CWS's own contractor.

17. IWM has received letters sent directly to ESD staff as well as copies of letters sent to the City Council about matters related to IWM's work. IWM's practice is to file and maintain these letters in a central shared computer drive, where IWM maintains its work files. I am familiar with the manner in which these letters are maintained in IWM's files.

18. Attached as Exhibit A is a true and correct copy of a September 2, 2015 letter from David Duong on behalf of CWS to the Mayor and City Council, which was located in IWM's files.

19. Attached as Exhibit B is a true and correct copy December 14, 2015 letter from Joel Corona on behalf of CWS to the Director to ESD and the City Manager. This letter was located in IWM's work files.

20. Attached as Exhibit C is a true and correct copy of a November 3, 2016 letter from David Duong on behalf of CWS to the Mayor and City Council. This letter was located in IWM's work files.

4

DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Case Number: 23-cv-01647-MMC

2260165

21. Attached as <u>Exhibit D</u> is true and correct copy of an April 3, 2018 letter from David Duong on behalf of CWS to Jeff Anderson, Interim Deputy Director for IWM. This document was located in IWM's work files.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 7, 2025.

VALERIE OSMOND

DECLARATION OF VALERIE OSMOND IN SUPPORT OF CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Case Number: 23-cv-01647-MMC

2260165

EXHIBIT A



CALIFORNIA WASTE
**SOLUTIONS**

September 2, 2015

Dear Honorable Mayor Sam Liccardo and Honorable Members of the City Council:

As a minority business owner, and someone who values the relationship between the City of San Jose and my firm, California Waste Solutions (CWS), I am reaching out to you with a hope to resolve this matter is a fair and equitable manner. This letter proposes a reasonable resolution of the issues we have encountered in the operation of the City's residential recycling program. It is my hope that we will be able to work together to solve our collective problem and put our disagreements behind us. I write to you because my company has already been wrongfully fined nearly $1,000,000 and suffered losses of over $9,000,000 as a result of ESD's failure to fix the single family dwelling recycling program. The program is awash in contamination placed in recycling carts throughout the City. ESD blames CWS for the problem when the fact is that ESD's inaction is the cause of the problem. ESD is not meeting its obligations to San Jose residents and to CWS. ESD is failing to control the amount of contamination placed in residential recycling carts. CWS has given the City written notice of literally tens of thousands of incidents where customer's recyclable carts were contaminated by trash and other non-program materials and ESD has done virtually nothing about it. CWS suffered losses of over $9,000,000 to date as a direct and result of ESD's failure to meet its obligations to CWS and to San Jose residents under the Recycle Plus program.

ESD's latest action, demanding inspections of CWS' recycling equipment in a letter from the consulting firms R3 and Sloan-Vasquez, ESD's consultants, demonstrates ESD's refusal to grasp the fundamental fact that the Recycle Plus program is awash in contamination as a result of ESD's failure to enforce its own rules. As discussed in detail below, the material collected by CWS contains roughly 40% trash. Tinkering with equipment and observing processes will not begin to address the fundamental failure of the Recycle Plus program at the hands of ESD's failure to enforce its rules. Indeed, the demand to inspect CWS equipment and processing appears to be nothing more than a last minute attempt to deflect blame onto CWS for ESD's own program failure. I cannot understand why ESD chose to perform inspections of CWS's equipment and operations rather than confronting the obvious contamination problem in the Recycling Plus program.

It will be interesting to see how ESD attempts to spin the results of an inspection of CWS's equipment and processes in its continuing effort to pass blame to CWS for ESD's own shortcomings. Ironically, if the inspection does anything to benefit anyone, it will be CWS who will benefit from third party proof of the damage done to CWS' equipment and the extra processing effort by our employees required by the flood of trash in Recycle Plus containers resulting from ESD's refusal to enforce (or even allow CWS to enforce) its own program. At the very least, ESD's sad attempt to deflect blame will give CWS evidence of the damage it suffers as a result of ESD's breach of its obligations under the Franchise Agreement.



The problem of excessive contamination in the single family dwelling ("SFD") customers under the Recycle Plus program is not that customers are unaware of what materials should be placed in their recycling carts. Instead, the problem is that relatively large recycling  carts are available to customers at no cost while the cost of solid waste carts is greatly increased as cart size is increased.  The lowest cost garbage cart is far less expensive than the next size higher. As other Cities with variable rates have found, the effect of the disparity in pricing for solid waste and recycling is to drive customers to use their effectively free recycling carts for overflow from their higher cost solid waste carts.[1]  ESD has not imposed any sanctions on any customers for contaminating recycling carts.  Indeed, on many occasions, ESD has specifically instructed CWS to pick up recycling carts that ESD knew were contaminated

The problems caused by excessive contamination in SFD recycling carts are outlined in detail in the Summary of Operational and Financial Issues Related to Excess Contamination in Source Separated Recyclable Collections Including Options for Resolution (the "Report"). Attached to the Report is a Characterization of Inbound Materials at California Waste Solutions San Jose Facility (the "Waste Characterization") confirming that fully 40% of the material placed by San Jose residents in their single family recycling carts is non-recyclable trash.

The resolution of the issues between CWS and the City with respect to Recycle Plus requires four steps. First, penalties assessed against CWS for high residue levels must be rescinded in light of the fact that they are impossible to achieve with the contamination levels that were confirmed by the Report and the Auditor's Report (defined below).  Second, residential recycling rates must be increased to reflect the actual cost of collecting and processing contaminated material. Third, future rates must cover the historic $9,000,000 loss suffered by CWS which would be payable over the balance of the Agreement between the City of San Jose and California Waste Solutions, Inc. for Recycle Plus SFD Recycling Collection Services (the "Franchise Agreement").  Fourth, the City, in cooperation with CWS, must embark upon an aggressive program of enforcement that includes the levying of fines against serial violators to insure compliance with the rules governing placement of recyclables in recyclable carts.

The history of contamination in SFD recycling carts is replete with demands for action by CWS coupled with explanations of the damage being caused by the contamination to which ESD has:

---

[1] ESD has made comparisons between SFD recycling and multi-family recycling, claiming that the City's multi-family dwelling ("MFD") recycler has achieved lower contamination rates and thus lower residue.  ESD's comparison is flawed because there is no direct financial interest on the part of renters who participate in the MFD program while there is a direct financial benefit to SFD customers in the form of lower garbage rates for smaller solid waste carts.  Indeed, CWS recycles a greater percentage of recyclable materials in the incoming waste stream than does the City's MFD contractor.



1. ignored the detailed explanation of the problem offered by CWS;
2. denied the existence of the problem;
3. withheld vital information from CWS and other City agencies confirming the existence, scope, and intractability of the problem;
4. blamed CWS for the problem that it knew from its own investigation was not the result of CWS' failure in its community outreach efforts; and
5. damaged CWS' reputation in the solid waste industry by publicly disparaging the quality of CWS' processing of San Jose recyclables with knowledge that CWS was recovering virtually all of the recyclable materials in the incoming waste stream.

That CWS has brought the issue to the attention of ESD repeatedly is not contested by ESD. It is apparent that ESD failed to review the monthly, quarterly and annual reports that included lists of tens of thousands of instances where customers received Non-Collection Notices (each, an "NCN"). CWS' continuing provision to ESD of lists of NCN's, explanations of how rampant contamination was damaging CWS, and pleas for assistance in addressing the problem have, to date, been of no avail. ESD is obligated to work with CWS to solve contamination issues under Article 6 of the Franchise Agreement yet has failed to do so.

Based on its discussions with ESD and the fact that there has not been a substantive response to the lists of tens of thousands of NCN's that have been provided to ESD to date, CWS concludes that the ESD has, for the most part, simply ignored the information provided to CWS, choosing to let CWS suffer from the financial consequences of the extreme contamination rather than undertake action to meet the City's responsibilities under the Franchise Agreement and correct the situation – both by doing something to reduce contamination and by addressing the losses suffered by CWS as a result of the program failure.

The City Auditor's 2015 report Curbside Recycling: The City Can Enhance its Single Family Residential Recycling Program to Improve Waste Diversion" (the "Auditor's Report") includes the astounding revelation that ESD actually conducted studies that confirmed contamination of incoming materials at the 25% to 35% level as early as 2008 and 2009, though ESD persisted -even with that information in hand - to claim that the problem of high residue was that CWS was not processing material adequately. Of course, it is not possible to achieve a lower level of residue than the percentage of contamination in the incoming waste stream over a sustained period. ESD had knowledge that the level of contamination of incoming material was in excess of 25% and did nothing about it except to blame CWS for not meeting its processing obligations. It is especially outrageous that ESD attacked CWS for failing to properly process materials given the fact that residue levels for 2011 through 2013 were LESS that the contamination levels disclosed in the characterization studies that ESD had in its possession but did not admit to having.

On occasion, ESD has blamed high levels of contamination in the SFD recycling carts on CWS' failure to properly conduct its public education and community outreach. First, the



City's contention is plainly false.  CWS has expended hundreds of thousands of dollars over the years identifying customers whose recyclable carts are contaminated.  CWS has issued hundreds of thousands of NCN's and addressed the issue one on one with its customers as well as with ESD.  Nevertheless, ESD persists in blaming contamination on CWS because of its outreach efforts.  Incredibly, CWS learned that ESD conducted its own outreach program where City employees identified contaminated recycling carts and met with customers to address the problem.  ESD found that its one-on-one efforts with customers had no effect on the level of contamination found in SFD carts – even the carts of the people with whom ESD actually spoke.[2]

ESD knew that contamination in recycling carts at the curb was higher than the residue levels from CWS' processing.  ESD knew that even direct one on one discussions with customers whose recycling containers were contaminated did not correct the problem.  Yet ESD continues to this day to blame CWS for the failure of the Recycle Plus program.  ESD has breached its basic obligation to CWS and San Jose residents by failing to address the structural problems in the Recycle Plus program and, instead, publicly blaming CWS for the problem and penalizing CWS financially for excessive residue which ESD knows to be the result of a flawed program and not the failure of CWS to perform.

In 2013, CWS believed that progress was being made when ESD agreed to a series of meetings with other departments in the City, including Code Enforcement, to develop an enforcement mechanism that might serve as one of many means to correct the obvious and persistent flaws in Recycle Plus.  Sadly, after a flurry of meetings over a few months, ESD just dropped the ball and took no action to enforce the Recycle Plus program.  But it is beyond dispute that ESD was aware of the high contamination rate, aware of the lack of effectiveness of simple conversation with contaminating customers, and aware of the likely program changes necessary to correct the problem.

The effect of ESD's refusal to shoulder responsibility for Recycle Plus is addressed in detail in the Report, which is attached to this letter for your convenience.  The Report details the financial harm suffered by CWS as a result of the failure and refusal of ESD to enforce the Recycle Plus Program or even admit to the failings.

The excessively high levels of contamination that are a part of the incoming recyclable stream increase the cost of processing, diminish the value of CWS' products, place CWS employees

---

[2] In correspondence dated March 14, 2014, from CWS to ESD, CWS confirms (and ESD has never denied) that "a City Staff colleague … disclosed that the City had conducted an intensive public education activity designed to reduce contamination.  The experiment involved city staff members checking recycling carts for contamination, speaking with residents about their findings and distributing public education materials to the residents with whom they interacted.  Staff shared that when they returned to check the carts after the campaign, there was no improvement.  Contamination levels had not fallen.  One staff colleague exclaimed, "it was as if we were never there."



**CALIFORNIA WASTE SOLUTIONS**

at risk where contaminants are dangerous, and increase CWS' disposal costs for residue[3]. The financial consequences to CWS of the failed Recycle Plus program are well known to ESD. ESD is fully aware of the impact of literally tens of thousands of tons of contaminants on CWS yet ESD persists in blaming CWS for the problem ESD created – the chaos within the program resulting from ESD's complete abdication of its responsibility to enforce Recycle Plus.

In order for the City to meet its responsibility to make Recycle Plus work, to compensate CWS for its prior losses and future costs resulting from ESD's historic failure to act, the following changes need to be implemented immediately:

1.  Increase the SFD Recycling rate by $2.90 per month to cover the actual costs suffered by CWS as a result of the failure of ESD to enforce Recycle Plus as detailed at page 11 of the Report.
2.  Increase the term of the Franchise Agreement and add a surcharge of $1.00 to the Recycling rate for approximately five years as a means for CWS to recover the $9,000,000 it has lost as a result of ESD's improper management of Recycle Plus.
3.  Eliminate all penalties pertaining to residue until ESD is able to demonstrate that it is properly and fairly managing Recycle Plus
4.  Develop and implement a contamination surcharge and other enforcement mechanisms reasonably necessary to reduce contamination to acceptable levels.

CWS requests that the City take immediate action to fix the broken Recycle Plus program and to relieve CWS from the extreme financial burden resulting from ESD's absolute failure to enforce Recycle Plus. The losses CWS suffers daily dealing with contamination in its collection and processing, exacerbated by penalties imposed by ESD and disposal costs for excess residue are immense and present an unfair and contractually unsustainable burden on a small business with deep roots in the San Jose community.

In closing, I am available to meet privately with you or others in the City to expedite the settlement of the issues I have addressed.

---

[3] Interestingly, and well known to ESD, the City pays for disposal of solid waste collected by its solid waste franchisee and that the City earns a kick back in the range of $5.00 per ton for all residue disposed of by CWS under Recycle Plus. This means that, as ESD ignored hundreds of thousands of NCN reports and withheld information about its level of knowledge about contamination and the efficacy of public education, it profited from the excessive residue resulting from its own failure to enforce Recycle Plus in two ways – first, the City was relieved from the cost of disposal of thousands of tons of solid waste and second the City received kick-backs for the excessive disposal fees paid by CWS.



Very truly yours,

David Duong, President
California Waste Solutions, Inc.


Cc:    Members of the San Jose City Council

Attachments:

      Summary of Operational and Financial Issues Related to Excess Contamination in
      Source Separated Recyclable Collections Including Options for Resolution

      Characterization of Inbound Materials at California Waste Solutions San Jose
      Facility

EXHIBIT B



**CALIFORNIA WASTE**
**SOLUTIONS**

December 14, 2015


Ms. Kerri Romanow, Director
Environmental Services Department, City of San Jose
200 East Santa Clara Street
San Jose, California 95113

Mr. Dave Sykes, Assistant City Manager
Office of the City Manager, City of San Jose
200 East Santa Clara Street
San Jose, California 95113

Dear Ms. Romanow and Mr. Dykes:

CWS appreciated hearing the ESD Staff report at the Transportation and Environment Committee on December 7, 2015. The report confirmed CWS's position that the Recycle Plus single-stream recyclables are excessively contaminated with Non-Program and garbage materials and that contamination leads to many problems for CWS, which includes excessive wear of our recycling facility. In our view, ESD's report underestimates the amount of contaminants and negative impacts on CWS's facility and on the program. CWS agrees with the ESD's conclusion that the Residential Recyclable Material (RRM) formula understates diversion achieved by CWS. CWS's position has consistently been that the RRM formula is not fair, in part, because it includes factors that CWS has no control.

The report confirms that CWS continues to provide excellent diversion of excessively contaminated materials coming to our San Jose facility and continues to dispose of less Non-Program material, garbage and residue than it receives from the Recycle Plus program. We appreciated Cascadia's recognition of that achievement at the T&E Committee in 2008 and believe that it should be reiterated. CWS continues to receive excessively contaminated materials and must continue to recover and divert many Non-Program materials and much contamination never contemplated by the parties to be included in the Recycles Plus program. ESD's report notes the high cost to CWS of addressing the excessive amount of contamination. The beneficiary is the City of San Jose. CWS is eager to continue processing, recovering and diverting those Non-Program materials and contaminants and we believe that ESD's report ultimately supports compensating CWS for that work.

In 2008, CWS initiated an innovative and transparent back-end processing for facility residue but discontinued it, in part, because of the restrictions that ESD imposed on CWS for achieving that extra diversion. We are pleased that ESD now embraces back-end processing; CWS continues offering to perform and direct that work. The Department's focus for back-end processing appears to be organic material, soiled and contaminated paper. Such materials are part of what is clearly excluded from the Recycle Plus single-stream program but nevertheless commonly and consistently discovered in that

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10th Street, Oakland, CA 94607 USA    Phone: 510.832.8111    Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA    Phone 408.292.0830    Fax 408.292.0833



CALIFORNIA WASTE
SOLUTIONS

stream. CWS will propose to divert more organic materials and contaminated paper. CWS can also review other diversion technologies that the City explored in the 2008 Characterization Study as well as other strategies to improve and enforce the Recycle Plus program. In 2002 and 2007 CWS built and then upgraded its facility to become a state of the art processing facility for San Jose. To increase diversion of incoming contamination, organic and soiled paper products CWS will offer to make another facility upgrade that achieves greater diversion for San Jose.

CWS objects to ESD's proposing to take away part of the recyclable stream we collect and process. CWS encourages ESD to begin enforcing the prevention of excessive contamination, to allow CWS to enforce the rules of the program, and to fairly compensate CWS's handling excessively contaminated material in the past and going forward. CWS has been financially disadvantaged because the material we are contracted to collect and process is excessively contaminated. I hope that a new collaboration between CWS and ESD will help us to achieve our mutual goal of an efficient single-stream recycling program for a fair price and that the City and CWS can reach a mutually satisfactory arrangements addressing CWS's past losses resulting from excessive contamination.

CWS looks forward to meeting with ESD to review ideas and designs that will achieve greater immediate and long-term diversion. Collaboration among CWS and ESD will allow the City and CWS, together, to increase diversion by improving and enforcing the Recycle Plus program and adding organics, waste paper and contaminants. We look forward to scheduling our first meeting during the week of December 14 and will call you about mutually available dates.

Please call if you have immediate questions and we may assist your team.

Sincerely,

CALIFORNIA WASTE SOLUTIONS

Joel Corona

Joel Corona

CC: Victor Duong, Kristina Duong, David Duong

EXHIBIT C



CALIFORNIA WASTE
SOLUTIONS

November 3, 2016

Mayor Sam Liccardo &
Members of the San Jose City Council
200 E. Santa Clara St.
San Jose, CA 95113

Dear Honorable Mayor Liccardo and Councilmembers:

I would like to start by thanking Mayor Liccardo for generously taking the time out of his schedule to meet with me recently to discuss the real crisis in the Recycle Plus Program which, if not corrected, will threaten the economic survival of CWS in the City of San Jose ("City"). I am optimistic that continuing to have an open and frank conversation best serves our common goals, provides transparency and first-rate service to the City and its residents.

CWS recently shared the Gershman, Brickman and Bratton (GBB) report with the City. GBB is a national independent municipal solid waste consulting firm. GBB's report explains: 1) the reasons for the problems in the Recycle Plus program; 2) the way to fix it; 3) the losses suffered by CWS as a result of ESD's mismanagement of the program; and 4) exposes inaccurate statements by ESD and its consultants. Please review the GBB report and give the issues raised in the report a fair and public hearing. The refusal of ESD to work with CWS on the crisis of excessive contamination has been financially devastating to my company. After so many years of working together, CWS and the City should continue to collaborate to solve the problem in a way that is fair to both the ratepayers and CWS.

A good starting point in solving this crisis is for CWS to finally be given the opportunity to set the record straight and address ESD's misleading and inaccurate information regarding the contamination crisis and CWS' operations. We greatly appreciate the time councilmembers have invested in this matter, and we want you to have the facts. The facts stated clearly are:

1. ESD's consultant, Cascadia, defined contamination rates (non-recyclable and non-program) to be approximately 40%. This finding is similar to CWS consultant's MDM Analytics report which we shared with the City. Notwithstanding that, CWS diverts much of this contaminated material and throws away much less garbage to the landfills than what we receive;

2. The ESD's failure to fine residents or upgrade to larger size garbage carts per the contract of those who are repeated contaminators has encouraged homeowners to use the recycling containers for their trash, and has refused to work collaboratively with CWS to curb contamination notwithstanding that program compliance and enforcement is a City responsibility under the contract and recommended by the City Auditor;

3. The City's pricing of trash service has driven District A and C residents to use carts that are too small leading to even more trash in recycling containers. The Office of the City Auditor in its May 2015 report found that approximately 90% of San Jose residents have the smallest (32 gallon) carts for trash which means any extra trash would be thrown into CWS' 96 gallon recycling carts rather than being penalized financially for upsizing their garbage carts;

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10ᵗʰ Street, Oakland, CA 94607 USA    Phone: 510.832.8111    Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA    Phone 408.292.0830    Fax 408.292.0833

SJ014363



4. Districts A and C have 30% more contamination than District B, yet ESD told the councilmembers that all districts have the same percentage of contamination;

5. ESD's claims that weak commodity prices are responsible for CWS' contamination problems are false and misleading, as well as nonsensical. CWS is known as one of the most experienced and leading material marketing exporter in the industry. CWS helps many national firms market and move their material even during the market downturn. CWS has always recognized the market risks from the inception of the contract. However, CWS contracted with the City to receive and process single stream material, not mixed solid waste. To state it plainly, CWS agreed to purchase apples but received oranges from the City.

6. ESD falsely accused CWS of getting a windfall profit in 2010 when in fact, CWS undertook additional costs without compensation. As a matter of fact, CWS has given back to the City approximately $4 million, which includes making monthly and annual rebate payments to the City, upgrading all of CWS' trucks, and paying additional money to tip at City designated landfill;

7. City is obligated to pay landfill disposal fee for all trash tons collected in the City of San Jose, while CWS is responsible for its own disposal fee. However, CWS not only incurs the cost to sort out trash that is not supposed to be in the recycling container, but also bears the cost to dispose of that trash. Not only has the City saved millions of dollars every year from not having to pay for the disposal fee that the City is directly responsible for, but the City earns additional profits from CWS' disposal of residue due to excessive contamination because ESD gets a "dividend" from the landfill for each ton of garbage CWS disposes;

8. ESD's consultant Joe Sloan, of Sloan Vasquez, misled the council about the lifespan and the condition of the existing equipment at CWS and inadequate staffing. CWS upgraded its equipment for the extension of the contract and invested approximately $6 million in those upgrades. Mr. Joe Sloan and his son Tommy Sloan were both former employees of CWS who were involved in system installation and operation. Retaining Sloan-Vasquez to evaluate CWS despite ESD's knowledge of Mr. Sloan's prior employment with CWS was clearly a conflict of interest;

9. CWS was awarded the contract to collect and process single-stream recyclables and CWS built a single-stream facility to process those contracted-for materials. However, because CWS receives excessively contaminated material that may be best suited for a dirty materials recovery facility (MRF), CWS has been forced to operate as a dirty MRF. Notwithstanding that fact, CWS has achieved great diversion, but at a great loss to CWS;

10. ESD's proposal to change the program to a Wet-Dry (Dirty MRF) system, instead of single-stream, without trying to fix the problem at the front-end of the program and allowing time for CWS to recoup development costs for a new facility not required under the existing contract is grossly unfair;

11. CWS has continuously offered to increase processing and diversion of the excessively contaminated material but ESD refused and severely restricted CWS from performing its own back-end processing to only 10%, which has had the obvious consequence of CWS not being able to meet its diversion and be subjected to millions of dollars in fines. To make matters worse, ESD has ignored CWS' repeated concerns regarding the excessive contamination and the flawed diversion methodology, two factors

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10th Street, Oakland, CA 94607 USA    Phone: 510.832.8111   Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA    Phone 408.292.0830    Fax 408.292.0833

SJ014364



CALIFORNIA WASTE
**SOLUTIONS**

which CWS has no control over. Even the City Auditor confirmed that Green Team would also have failed to meet the diversion if the same flawed methodology was applied to them equally. Moreover, ESD has offered inconsistent direction by changing its position to allow back-end processing by recommending that CWS deliver some of its materials to a dirty MRF operated by another City contractor, which was built to process excessively contaminated materials and not to a single stream facility like CWS' recycling facility.

12. CWS has paid hundreds of thousands of dollars per year and continues to be fined for penalties, for the unfair and unattainable diversion standard.

It is time for the City Council to direct ESD to address the issues raised in the GBB Report and negotiate a solution that is fair and reasonable for all parties. It is also about time that CWS finally be given the opportunity to address the countless misinformation with facts so that all parties can engage in meaningful dialogue and find real solutions. I promise that I will personally engage in that effort and I am confident that a negotiated solution is still possible. CWS suggests the following to help both improve the City's Recycle Plus Program and our partnership:

- Stop fining CWS for diversion expectation that is not realistic to the actual program;
- Implement a City-wide food waste program;
- Lower the cost for residents needing larger garbage carts, accompanied by effective outreach and education;
- Renegotiate the contract to accurately reflect the actual program including extending the term of the current contract to allow CWS to invest approximately $45 million to build a dirty MRF to process what is now collected and expand the program material that can be collected and diverted from the waste stream.

Please don't let this matter be delayed again while the wellbeing of my company hangs in the balance. Being the only Vietnamese-American minority owned company with the biggest contract in the City, CWS has been a proud service provider to San Jose for the past 15 years and enjoys a close and trusted relationship with its citizens. Please direct that ESD and CWS engage immediately in substantive negotiations leading to a fair resolution of the crisis in the Recycle Plus program that allows both CWS and ESD to achieve their important goals of continuing to provide excellent recycling services and solid waste diversion at a fair price to the City and residents of San Jose.

Sincerely,

David Duong
CEO/President

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10th Street, Oakland, CA 94607 USA   Phone: 510.832.8111   Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA   Phone 408.292.0830   Fax 408.292.0833

SJ014365

EXHIBIT D



**CALIFORNIA WASTE SOLUTIONS**

April 3, 2018

Jeff Anderson
Interim Deputy Director, Environmental Services Department
200 E. Santa Clara St.
10ᵗʰ Floor Tower
San José, CA 95113

Re:  San José Recycle Plus Cost Proposal Form

Dear Jeff,

CWS has submitted the enclosed Recycle Plus Program Cost Proposal form in the format requested by the City solely because the City's form blocks CWS from proposing any changes to collection rates during the 2018-2021 time period.  CWS' actual rate proposal is the pricing submitted to the City at City's request on January 18, 2018 and the enhancements submitted on February 4, 2018.  A copy of these documents is enclosed herewith for the City's convenient reference.

A rate adjustment is necessary and appropriate **now** for the enhanced collection services being offered to the City by CWS because, through no fault of CWS, CWS cannot continue to provide current collection services at current rates without continuing to suffer a huge financial loss.  Every proposal made by CWS to the City over the past year (and there have been many) described a rate adjustment effective immediately.  The City never responded that this approach was unacceptable.  Thus, CWS was very surprised and extremely disappointed when the City suddenly announced that negotiations could not include any current rate adjustment.

CWS is proposing a fair and reasonable rate which might finally allow us to service the City and its residents in a manner that is financially viable for CWS. The City is well aware that CWS has been servicing the City's approximately 166,000 single family dwelling units at a great financial loss for years due to the highly contaminated materials that CWS collects and processes on a daily basis.  The City's own studies demonstrate that the level of contamination is substantially higher in CWS' service area than elsewhere in the City.  The City knows that CWS has the legal right to reject the contents of thousands of Recycling Carts every week because they are impossibly contaminated with Non-Recyclable Materials.  To date, CWS has refrained from taking this drastic step. CWS has provided the City with thousands of pictures and other supporting documents showing excessive contamination, but not only was CWS criticized for exercising this contractual right, the City has not worked with CWS to resolve this rampant problem per the contract.

However, if the City refuses to allow a rate adjustment effective immediately as part of the contract extension, CWS may have no other option.  To date, this behemoth financial loss to CWS is nearly $30 Million and climbing.  CWS has continued to collect these contaminated Carts because the City has led us for the past year to believe that relief was on the way.  To learn that no relief is being offered and to hear the City take the position that neither the City nor its residents have any responsibility for contamination in Recycling Carts is stunning.  Who exactly does the City think is responsible for the contamination getting into the Carts if it is not the City and its residents?

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10ᵗʰ Street, Oakland, CA 94607 USA    Phone: 510.832.8111    Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA    Phone 408.292.0830    Fax 408.292.0833



SJ014374



**CALIFORNIA WASTE
SOLUTIONS**

To further exacerbate the problem of high contamination in the Recycling Carts, China's ban of 24 types of commonly Recyclable Materials is causing additional burdens on CWS that are crushing both financially and operationally. Based on the 2017 data just from the impacts of the China ban alone, CWS' calculation shows a projected loss of almost $6 Million if CWS is forced to process China-rejected Recyclable Materials. Of course, at this rate, future losses are projected to only increase.

Neither of these current situations is tenable for CWS in continuing to provide the exceptional service to the City and its residents as it has strived to do under less than ideal circumstances and on an uneven playing field. It's also unfair and unreasonable to ask us to continue operating to our financial detriment as we have done for years and wait additional years to receive just compensation for the services.

CWS contracted with the City to collect Recyclable Materials. It agreed to take ownership of Recyclable Materials. It agreed to process Recyclable Materials where Market Specifications indicated they could be processed and marketed—even at a loss. CWS incurs the cost to dispose of the excessive garbage that is routinely put in the Recycling Carts, while the City benefits by not having to pay the landfill disposal fees, receives additional profits from CWS' disposal of the garbage by getting a "dividend" from the landfill for each ton of garbage CWS disposes of and collects hundreds of thousands of dollars in diversion disincentive from CWS year after year. The fundamental problem is that the Recycling Carts quite often don't have Recyclable Materials; they are excessively contaminated with garbage. CWS did not sign up to collect or process those sorts of materials. This fundamental problem is exacerbated by the China ban.

Respectfully, an immediate rate adjustment is both equitable and essential. If the City is unable to recognize that reality and insists that the current contract remain in place without appropriate changes, CWS may well be forced into following the letter of that contract for collecting Recyclable Materials by insisting that the City take charge of the "Recycling" Carts when they contain highly contaminated materials. This is not what CWS wants. But options appear to be limited at the moment.

CWS appreciates and understands that there are inherent risks and unknowns in this industry, as we have navigated our way successfully thus far for decades. However, this is a unique and unchartered ground where both the City and CWS together must address the issue of unacceptable contamination in recycling carts and also prepare for the impact of the China's ban on the Recycle Plus Program. It's our expectation and hope that the City has a genuine interest in negotiating with CWS in good faith for a mutually beneficial outcome, and ultimately, in the best interest of providing ongoing high quality service to the residents of San José. As always, I welcome any feedback and questions you may have to further this process.

Very truly yours,

David Duong
CEO/President

**CALIFORNIA WASTE SOLUTIONS, INC.**
www.californiawastesolutions.com
1820 10th Street, Oakland, CA 94607 USA    Phone: 510.832.8111    Fax: 510.832.8206
1005 Timothy Drive, San Jose, CA 95133-1043 USA    Phone 408.292.0830    Fax 408.292.0833