1  NORA FRIMANN, City Attorney (93249)
2  ARDELL JOHNSON, Assistant City Attorney (95340)
3  ELISA T. TOLENTINO, Chief Deputy City Attorney (245962)
   THOMAS J. GRAY, Sr. Deputy City Attorney (191411)
4  NICHOLAS E. SYMPSON, Sr. Deputy City Attorney (295535)
   STEPHANIE DAVIN, Deputy City Attorney (307911)
5  Office of the City Attorney
   200 East Santa Clara Street, 16th Floor
6  San José, California 95113-1905
7  Telephone Number: (408) 535-1900
   Facsimile Number: (408) 998-3131
8  E-Mail Address:  cao.main@sanjoseca.gov

9  Attorneys for CITY OF SAN JOSE

SUPERIOR COURT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| CALIFORNIA WASTE SOLUTIONS, INC., | Case Number:  3:23-cv-01647-MMC |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** |
| v. | |
| CITY OF SAN JOSE, and DOES 1 to 50, inclusive, | |
| Defendants. | |
|  | DATE: December 12, 2025<br>TIME: 9:00 a.m<br>DEPT: Courtroom 7, 19th Floor<br>JUDGE: Hon. Maxine M. Chesney |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................................1
II. UNDISPUTED MATERIAL FACTS ..........................................................................................2
III. LEGAL STANDARD ...................................................................................................................6
IV. ARGUMENT.................................................................................................................................4
    A. Plaintiff's Breach Of Contract And Good Faith And Fair Dealing Claims Are Barred Because CWS's Government Claim Was Filed Late................................................................7
    B. Plaintiff's Discrimination And Equal Protection Claims Are Barred By The Applicable Statute Of Limitations. ............................................................................................................9
    C. Plaintiff's Equal Protection Claim Fails Because The City Is Not Liable As Respondeat Superior For The Actions Of City Employees. ....................................................................10
    D. The Undisputed Facts Establish That The City Did Not Discriminate Against CWS...........11
    E. Since The Undisputed Facts Establish There Was No Racial Discrimination, Plaintiff's Equal Protection Claim Also Fails .......................................................................................12
    F. The California Constitution Equal Protection Claim Should Be Dismissed Because Such A Claim Does Not Allow For Individual Monetary Damages, The Only Relief Plaintiff Is Seeking Is For Its Equal Protection Claim............................................................................14
V. CONCLUSION............................................................................................................................14

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 6

*Brown v. Ga. Bd. Of Pardons & Paroles*,
    335 F.3d 1259 (11th Cir. 2003) .......................................................................................... 9

*Canatella v. Van De Kamp*,
    486 F.3d 1128 (9th Cir. 2007) .......................................................................................... 10

*Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*,
    344 F.3d 822 (9th Cir. 2003) ............................................................................................. 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................... 7

*DeGrassi v. City of Glendora*,
    207 F.3d 636 (9th Cir. 2000) ............................................................................................. 8

*Gates v. Superior Court*,
    32 Cal.App.4th 481, 521–525 (1995) ............................................................................... 14

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992) .......................................................................................... 11

*Goodman v. Lukens Steel Co.*,
    482 U.S. 656 (1987) ......................................................................................................... 10

*Keenan v. Allan*,
    91 F.3d 1275, 1279 (9th Cir. 1996) .................................................................................... 7

*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001) ........................................................................................... 8

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ......................................................................................................... 10

*Lukovsky v. City and County of S.F.*,
    535 F.3d 1044 (9th Cir. 2008) .......................................................................................... 10

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ........................................................................................... 7

*Oviatt v. Pearce,*
    954 F2d 147(9th Cir. 1992) .............................................................................................. 10

*Pouncil v. Tilton*,
    704 F.3d 568 (9th Cir. 2012) ............................................................................................. 8

ii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

*Richards v. Combined Ins. Co*,
  55 F.3d 247 (7th Cir. 1995) .................................................................................................... 7

*RK Ventures, Inc. v. City of Seattle*,
  307 F.3d 1045 (9th Cir. 2002) ................................................................................................ 9

*Runyan v. McCrary*,
  427 U.S. 160 (1976) ........................................................................................................... 9-10

*Simo v. Union of Needletrades, Indus. & Textile Employees*,
  322 F.3d 602 (9th Cir. 2003) ................................................................................................. 6

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) .............................................................................................. 6-7

*Summers v. Teichert & Sons, Inc.*,
  127 F.3d 1150 (9th Cir. 1997) ............................................................................................... 7

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ................................................................................................. 6

*Thompson v. City of Shasta Lake*,
  314 F. Supp. 2d 1017, (E.D. Cal. 2004) .......................................................................... 9, 10

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) ........................................................................................ 12-13

**Codes**

42 U.S.C. § 1981 ......................................................................................................................... 9, 10
42 U.S.C. § 1983 ...................................................................................................................... 10, 11, 12
Civ. Proc. Code § 335.1 .................................................................................................................. 10
Fed. R. Civ. P. 56 ........................................................................................................................... 6, 7
Gov't Code §911.2(a) ................................................................................................................... 6, 7, 8

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

I.  INTRODUCTION

CWS has been providing residential solid waste and recyclables collection services for the City of San Jose ("City") since 2007. The relationship started on February 15, 2006, when the City released a Request for Proposal (RFP) for procurement of collection services to collect residential solid waste and recyclables for the City. During a competitive RFP process, CWS submitted a proposal, highlighting the fact that CWS is a minority-owned business, and describing how the owners capitalized on their familial, linguistic and cultural ties to Vietnam and China to turn CWS into a successful company. The City awarded the recycling contract to CWS with recycling collection services from July 1, 2007, to June 30, 2013. CWS's combined compensation under the contract was approximately 60% more than the previous hauler's (Norcal) contract with the City.

At some point during the performance of the contract, CWS realized its operational costs were becoming too expensive. CWS realized it had bid too low during the competitive RFP. The rates CWS had proposed and agreed to were no longer profitable. This led to CWS to make repeated requests to the City to adjust the compensation rates. CWS also consistently violated its contractual obligations.

Despite CWS's breaches, the City routinely tried to work with CWS. CWS, however, continued to consistently violate the terms of the Agreement. As a result, the City imposed contractually agreed-upon diversion penalties for CWS's continued failures.

Not only did the City work with CWS extensively to help CWS resolve its performance problems, but the City also helped CWS with its costs of doing business with the City. In 2017 the City approved additional funding for unlimited junk pick-up from residents. This financial incentive increased CWS's annual compensation by approximately $800,000, a 70% increase to CWS in compensation for junk pick-up services. The City offered other financial incentives to CWS to improve its performance and also agreed to modifications of the contract. On June 18, 2019, the City agreed to another amendment modifying terms that CWS had complained about for years and providing CWS with more revenue.

Due to CWS's historically deficient performance under the contract throughout the years, the City could have re-initiated the competitive RFP process and sought out another service provider for

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

residential recycling. But instead, the City decided to give CWS another chance. The City agreed to an Amended and Restated Agreement for a term beginning July 1, 2021, through June 30, 2036.

After the City committed to working with CWS for another 15 years, CWS unexpectedly filed this lawsuit, alleging unsubstantiated claims of discrimination and breach of contract. The undisputed material facts, however, establish that the City did not breach its obligations to CWS, nor did it discriminate against CWS.  Moreover, CWS waited too long to file both its Government claims with City, as well as its racial discrimination and equal protection violation claims.  Accordingly, the City respectfully requests that the Court grant summary judgment in its favor as to all of CWS's remaining claims.

## II. UNDISPUTED MATERIAL FACTS

The City has two contractors that provide residential recycling services: California Waste Solutions and GreenTeam. CWS provides services to single-family homes in two of the City's service districts: District A and District C. GreenTeam serves single-family homes in District B and all multi-family residences in the city. The contracts are managed by staff in the Integrated Waste Management ("IWM") division of the Environmental Services Department ("ESD").

David Duong is the founder, president, and CEO of CWS, which he founded in 1992. (Declaration of Thomas Gray, Ex. A, at 9:5-12). Prior to moving to the United States, David Duong's parents owned the largest paper mill in South Vietnam and while attending school, David Duong helped with the family business.  (Id., at 11:1-22) David Duong then moved to the United States in the 1980's and the family started a new recycling business called Cogido, a 'buy-back' business that processed and sold recyclable materials but was not involved in collection.  (Id., at 9:15-10:12.) Around 1989, Cogido was purchased by the Norcal company. (Id., at 12:16-22.) When Norcal purchased Cogido, David Duong continued to manage processing facilities as an employee of Norcal. (Id., at 17:16- 18:12.)  As an operations manager for Norcal, David Duong oversaw processing of residential recyclable material collected by trucks. (Id., at 20:1-8.) Once the transfer of the Cogido business to Norcal was complete, David Duong founded CWS in 1992. (Id., at 9:5-12, 26: 3-19.)

//

//

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

Before being awarded a contract by the City, CWS processed recyclables collected in Districts A and C as a subcontractor for Norcal, which at the time had the City contract for the collection of recyclables in these districts. (Declaration of Jeff Anderson ¶ 3.)

In 2006, following a request for proposals and evaluation of bids, the San José City Council awarded a six-year agreement to CWS for recycling service in Districts A and C. At the time CWS submitted its bid, they had been in business for over 10 years. (Gray Dec., Ex. A, at 33: 10-20). CWS employed the services of expert consultants in the recycling industry to develop their proposal and negotiate terms with the City. (Id., at 36:6 – 40:14).

In 2010, the Council directed staff to negotiate new 11-year agreements with all of its garbage and recycling contractors, including CWS. After extensive negotiating, on December 14, 2011, the City and CWS entered into the Agreement Between the City of San Jose and California Waste Solutions, Inc. for Recycle Plus SFD Recycling Collection Services ("Contract"). The Contract's term was July 1, 2010 to June 30, 2021. CWS agreed to the terms of the Contract, including compensation and the formula for determining the required rate for waste diversion. (*See*, *generally*, Declaration of Toni Taber, Ex. A.)

IWM staff sought to administer the Contract, as well as its contract with GreenTeam, fairly and consistently. Staff worked with contractors to facilitate the smooth and efficient delivery of services to the city's residents. They met regularly with contractors to identify and address issues. (Declaration of Cecilia Rios ¶ 22.) None of the actions taken by IWM in managing the Contract was motivated by, or based on, CWS's status as a minority-owned business. (Anderson Dec. ¶ 7; Rios Dec. ¶ 23; Declaration of Valerie Osmond ¶ 11.)

City staff listened to concerns raised by CWS and attempted to find reasonable solutions. For example, under the Contract, CWS was responsible for preparing an annual Public Education and Outreach Plan ("PEOP"). During an audit of CWS's PEOPs for the years 2010 through 2013, it was discovered that CWS had underspent by approximately $55,000 over those years. Instead of penalizing CWS under the Contract, ESD allowed CWS to increase its PEOP budget for 2014 by the amount of its shortfall for 2010-2013. (Anderson Dec. ¶ 9(b).)

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

Additionally, during the term of the Contract, CWS complained of contamination (i.e., presence of non-recyclable material) in customers' recycling bins. (Anderson Dec. ¶ 8; see also, Osmond Dec, Exs. A-D.) In response to these complaints, ESD utilized newly hired environmental inspectors to investigate the contamination about which CWS complained. (Anderson Dec. ¶ 9(a).) Additionally, in 2015, ESD requested the City Auditor to conduct an audit of the City's recycling program. (Rios Dec. ¶ 10.)

ESD has allowed CWS to pay for penalties over a period of time, instead of as a lump sum, in an effort to minimize financial hardship to CWS. For example, in June 2014, ESD allowed CWS to pay a diversion disincentive payment over 12 months. (Anderson Dec. ¶9(c); Rios Dec. 8.) Additionally, on at least three occasions, the City reduced or reversed liquidated damages for non-performance. (Anderson Dec. ¶ 9(d); Rios Dec. ¶ 16.)

The Contract required CWS to meet certain diversion standards, that is, to divert from the landfill a certain percentage of materials collected. The Contract provides a formula for calculating the required diversion rate. If the required diversion rate is not achieved, a diversion disincentive payment is required of CWS. (Anderson Dec. ¶ 10; Rios Dec. ¶ 6.) ESD applied the diversion formula set forth in the Contract and calculated diversion disincentive payments based on the formula. (Anderson Dec. ¶10; Rios Dec. ¶ 7.)

During the term of the Contract, China adopted its "National Sword" policy, which reduced the amount of waste it accepted from international sources. This change in the resale market prompted concerns from CWS. In response to these concerns, the City Council authorized ESD to waive the diversion disincentive if a contractor was able to show that the "National Sword" policy caused its failure to meet the required diversion standard. (Rios Dec. ¶ 18; Osmond Dec. ¶ 9; *see also*, Taber Dec., Ex E.) This resulted in ESD waiving approximately $262,000 in diversion disincentives for CWS. (Rios Dec. ¶ 18; Osmond Dec. ¶ 9.)

In March 2017, the City Council approved the First Amendment to the Contract. The First Amendment provided CWS with additional compensation for large-item collection. (Taber Dec., Ex B.) Additionally, in 2017, ESD recommended to the City Council that ESD be authorized to negotiate contract extensions with residential garbage and recycling contractors, including CWS. The City

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

Council approved this recommendation, directing staff to return to Council with key service enhancements and costs for the potential new service agreements. (Anderson Dec. ¶ 12.) In 2017 and 2018, City staff negotiated draft contract extensions with residential garbage and recycling contractors, including CWS. (Anderson Dec. ¶13.)

Under the Contract, CWS is authorized to issue a non-collection notice if a particular cart is so contaminated that non-recyclable material cannot be easily separated from recyclable material. (Rios Dec. ¶ 12; see, Taber Dec., Ex A, at § 6.2.3.) In the summer of 2018, the number of NCNs issued by CWS jumped dramatically – from approximately 4,500 per month to approximately 9,500 in a single month. (Rios Dec. ¶ 14.) This figure peaked at over 14,000 in July 2018. (Id.)

At a City Council meeting on January 15, 2019, ESD staff recommended that the City cease negotiations with CWS. This recommendation was based on the significant increase in compensation sought by CWS, concerns about CWS's performance under the Contract, and customer complaints. (Anderson Dec. ¶15; Osmond Dec. ¶ 4.) Prior to the January 15, 2019 Council meeting, ESD submitted two memoranda, dated November 13, 2018 and January 10, 2019, which explained ESD's analysis and recommendations. (Anderson Dec. ¶ 16.) Given the Council's direction in March 2017, the memos were prepared with a focus on potential new service enhancements and cost implications for the City's ratepayers. (Id.; Gray Dec., Ex. B, at 52:10-54:3.) The City Council rejected ESD's recommendation, directed staff to negotiate with CWS for another 30 days, and authorized staff to negotiate an extension that would pay CWS up to an amount that would match GreenTeam's per-household rate for service. (Osmond Dec. ¶ 5.)

In June 2019, the City and CWS agreed to a Second Amendment to the Contract. (Id., ¶ 6.) The Second Amendment included a performance evaluation period from July 1, 2019 through June 30, 2020. (Id.; *see also*, Taber Dec., Ex. C, § 2.3.) If, following the competition of this performance evaluation period, CWS had satisfied performance standards, CWS and the City would enter into a new agreement for recycling services effective July 1, 2021 through June 30, 2036. (Osmond Dec ¶ 6; Taber Dec., Ex. C, § 2.3.2.) If CWS had not satisfied performance standards during this performance evaluation period, the City would have issued a request for proposals for recycling services in Districts A and C. CWS would not have been disqualified from submitting a bid. (Osmond Dec. ¶ 7.) The

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

performance evaluation period was not a "probation," and the City never considered terminating the Contract. (*See*, Anderson Dec. ¶ 17; Rios Dec. ¶ 19.)

The Second Amendment also changed the circumstances under which CWS could issue NCNs, changed how diversion is measured and the disincentives for not meeting diversion targets, implement customer satisfaction standards, assign outreach and education functions to the City, and develop a "safety net" for changes in the recycling market. (Osmond Dec. ¶8; *see generally*, Taber Dec, Ex C.)

The performance evaluation period was completed successfully, and in July 2021, the City and CWS entered into an Amended and Restated Agreement with a term from July 1, 2021 through June 30, 2036.

CWS has been complaining about contamination, the City's response to the contamination, and the diversion rate formula since at least 2015. (*See*, Osmond Dec., Exs A-D.) Yet, it did not file a claim as required by the Government Claim Act until June 28, 2022, which was 363 days after the expiration of the Contract. (Taber Dec. ¶ 11.)

### III.  LEGAL STANDARD

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252. "Conclusory, speculative testimony in affidavits and moving papers is

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Anderson,* 477 U.S. at 248-49. A fact is "material" if it may affect the outcome of the case. Id. at 248.

If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." Id. (quoting *Richards*, 55 F.3d at 251); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotations omitted). If the non-moving party fails to provide evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## IV. ARGUMENT

### A. Plaintiff's Breach Of Contract And Good Faith And Fair Dealing Claims Are Barred Because CWS's Government Claim Was Filed Late.

Government Code section 911.2(a) requires that claims against a public entity "relating to a cause of action for death or for injury to person or to personal property or growing crops shall be

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

presented" not later than six months after the accrual of the cause of action. Claims relating to all other causes of action shall be presented not later than one year after the accrual of the cause of action. Here, Plaintiff presented its breach of contract and implied covenant of good faith and fair dealing claim (collectively the "breach of contract claims") on June 28, 2022, 363 days after the initial contract between CWS and the City expired on June 30, 2021. Therefore, only breach of contract claims that accrued between the three days of June 28, 2021 to June 30, 2021 are covered by the claim presented to the City on June 28, 2022.

In its Complaint, Plaintiff asserts that its breach of contract claims are not untimely because the continuing violation doctrine applies to all claims due to the City's alleged "continuous course of conduct and repeated ongoing breaches of the Agreement and subsequent retaliation when CWS complained." CWS then concludes that "the statute of limitations did not begin accruing on CWS's contract claims on wrongs committed throughout the contract period until the Agreement ended." (*See* Complaint, ¶ 41)

CWS, however, does not state when the Agreement ended. It is undisputed that the parties significantly amended the Agreement as of July 1, 2019 and addressed many, if not all, of the issues that CWS had been complaining about for years. (Osmond Dec. ¶¶ 4,5,6,8, Exs. A-D; Taber Dec, Ex C.) Consequently, the terms of the Agreement that CWS alleges were breached were modified (they "ended") as of July 1, 2019. (*Id.*)

In California, the Government Claims Act requires that breach of contract claims be presented to a governmental agency within one year "of the accrual" of the breach of contract claim. *See* Gov't Code § 911.2(a). The continuing violation doctrine may delay the accrual of older claims if a plaintiff can provide evidence the alleged acts "are related closely enough to constitute a continuing violation, and that **one or more of the acts falls within the limitations period**." *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001) (*quoting DeGrassi v. City of Glendora*, 207 F.3d 636, 645 (9th Cir. 2000) (Emphasis added)). However, the continuing violation doctrine does not apply if the harm alleged is a "mere continuing impact from past violations," *Knox*, 260 F.3d at 1013, or if the claim is "based on an independently wrongful, discrete act." *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012). Thus, "the critical distinction in the continuing violation analysis is whether the plaintiff complains of the present

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Brown v. Ga. Bd. Of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (citation omitted).

Here, CWS needs to present evidence that a new breach of the contract claim occurred within one year of June 28, 2022, the date of the presentation of its claim to the City, not just that continued harm from previous breaches. CWS must also show that this new claim is closely related to the other previous alleged breaches in order to delay the accrual of the previous breaches. *See RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061 (9th Cir. 2002) (rejecting plaintiff's analogy of a hostile work environment claim to a claim where a municipality subjected plaintiff to a pattern of hostile or harassing conduct, concluding that the latter were discrete acts, actionable on their own, rather than a series of separate acts that collectively constituted one unlawful practice); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822 (9th Cir. 2003)* (rejecting the continuing violation theory where plaintiff alleged seven incidents of selective enforcement by City, in violation of his equal protection rights, finding that the incidents were discrete acts). *See Thompson v. City of Shasta Lake,* 314 F. Supp. 2d 1017, 1026-1027 (E.D. Cal. 2004) (continuing violation theory does not apply to discrete and dissimilar acts that are actionable on their own).

In light of the significant amendments to the Agreement that were effective July 1, 2019, CWS will not be able to carry its burden to present evidence and create a triable issue of fact that a new breach of contract claim arose between June 28, 2021 and June 30, 2021. Accordingly, the City respectfully requests that the Court grant summary judgment in its favor as to Plaintiff's first two causes of action.

### B. Plaintiff's Discrimination And Equal Protection Claims Are Barred By The Applicable Statutes Of Limitations.

Similarly, Plaintiff's discrimination and equal protection claims are barred by the applicable statute of limitations.

42 U.S.C. § 1981 ("§ 1981") prohibits racial discrimination in connection with the making or enforcement of private contracts. *See Runyan v. McCrary*, 427 U.S. 160, 169 (1976) ("It is now well established that § 1 of the Civil Rights Act of 1866 prohibits racial discrimination in the making and

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

enforcement of private contracts."). The appropriate statute of limitations for cases arising under § 1981 is the limitations period for personal injury claims in the state in which the claim arises. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) ("Because §1981, like §§1982 and 1983, does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations."). On January 1, 2003, the statute of limitations for personal injuries in California was lengthened from one to two years. *See Canatella v. Van De Kamp*, 486 F.3d 1128, 1132-33 (9th Cir. 2007); *see also* Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."). Even though "California law determines the *length* of the limitations period, federal law determines when a civil rights claim *accrues*." *Lukovsky v. City and County of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008) (Emphasis in original). In *Lukovsky*, the Ninth Circuit held that racial discrimination claims arising under §1981 begin to accrue on the day of injury, as opposed to the day the claimant has reason to know of the alleged discrimination. *Id.* at 1048-50.

Again, as set forth above, the continuing violation theory does not apply to claims that are discrete acts. *See Thompson,* 314 F. Supp. 2d at 1026-1027. Plaintiff filed his Complaint on January 6, 2023. Therefore, any discrimination claims that accrued prior to January 6, 2021 are barred by the statute of limitations. The undisputed facts establish that CWS's discrimination claims all arose prior to January 2021. Once again, CWS must come forward with evidence to create a triable issue of fact that a new discrimination claim occurred after January 6, 2021. Again, in light of the significant amendments to the Agreement that were effective July 1, 2019 and the concessions that the City gave to CWS regarding a number of issues that CWS had been complaining about for years, CWS will not be able to provide evidence of any discriminatory actions by the City after July 1, 2019.

**C. Plaintiff's Equal Protection Claim Fails Because The City Is Not Liable As Respondeat Superior For The Actions Of City Employees**.

Plaintiff has asserted a federal §1983 discrimination claim and an equal protection claim based on the California law[1] and federal law (i.e. also a § 1983). Plaintiff has only named the City of San Jose as a defendant in this case. But the City, a municipality, cannot be held liable *solely* because it

---

[1] As set forth below, the California Constitution equal protection claim does not allow for damages. Since damages are the only remedy Plaintiff seeks for the Fourth Cause of Action for Equal Protection, the claim fails and should be dismissed.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

employs a tortfeasor—or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  A municipality can be liable, however, if "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  The policymaker must further "make a deliberate choice from among various alternatives to follow a particular course of action." *Id.* (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).

Here, Plaintiff has not asserted that the San Jose City Council, the final policy-making authority, ratified decisions of City employees working with CWS on the day-to-day dealings related to the Agreement between CWs and the City.  Nor can it.  In the instances where the City Council did get involved, it routinely acted in ways that benefitted CWS.  (*See e.g.* Osmond Dec., ¶¶ 3,4,5).

**D. The Undisputed Facts Establish That The City Did Not Discriminate Against CWS**.

The undisputed facts reveal that the City was merely enforcing the contractual terms that CWS had accepted. CWS complains that it was paid less than other companies, but it cannot dispute that it was paid the contractually agreed-upon rate. Additionally, ESD calculated CWS's diversion rate using the formula identified in the Contract, and it applied the calculation for the diversion disincentive payment set forth in the Contract. (Rios ¶¶ 6-7.) It did the same for GreenTeam. (Osmond Dec. ¶ 12 [GreenTeam assessed $10,000 in liquidated damages for missing diversion disincentive by 0.01%].) While CWS might argue that it paid more in diversion-related penalties than GreenTeam, it cannot dispute that it failed to meet diversion standards required by the Contract. Finally, the "probation" about which CWS complains was actually a performance evaluation period that CWS agreed to. (Osmond Dec. ¶ 6; *see*, Taber Dec., Ex. C.)

The City did make efforts to alleviate the concerns raised by CWS. It waived diversion disincentive payments following China's adoption of its "National Sword" policy. In the Second Amendment to the Contract, the City agreed to change how diversion was measured, as well as the disincentives for not meeting diversion targets. (Osmond Dec. ¶ 8.) The City agreed to a Contract amendment that provided CWS additional compensation for large-item pickup. (Anderson Dec. ¶ 11;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

see, Taber Dec., Ex. B.) ESD also reversed or reduced liquidated damages on at least three occasions. (Anderson Dec. ¶ 9(d); Rios Dec. ¶ 16.)

CWS complains about the City's failure to provide assistance that was not required by the Contract. The Contract contains no provision requiring the City to provide larger garbage carts to residents. And when the City ultimately did conduct a pilot program in 2022 and 2024, it discovered, at a cost of $960,000, that larger garbage carts do not conclusively result in less contamination of recycling carts. (Osmond Dec. ¶ 10.) The Contract also does not require the City to issue citations to, or take any enforcement action against, residents who place non-recyclable materials in their recycling carts. The City did consider issuing citations but determined that course of action was unjustified absent proof that the resident had placed the non-recyclable material in the cart. (Rios Dec. ¶ 11.)

CWS characterizes the City's efforts at enforcing the contract and the City's denial of requests from CWS to provide services not included in the Agreement as racial discrimination.  But the undisputed facts do not support such a finding.

E. **Since The Undisputed Facts Establish There Was No Racial Discrimination, Plaintiff's Equal Protection Claim Also Fails.**

To prevail on his claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show he was treated in a manner inconsistent with others similarly situated, and that Defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (citation omitted).

Here, Plaintiff offers no evidence demonstrating Defendant treated others who are similarly situated differently and acted based on discriminatory intent. (*See id.* at 1167) (affirming summary judgment in favor of defendants on plaintiff's equal protection claim where plaintiff did not offer sufficient evidence of racial discrimination to create a triable issue of material fact).  The other waste and recycling haulers had been working with the City for many years before CWS got its first contract with the City in 2006.  (Gray Dec., Ex. A) At that time, CWS had never done any waste or recycling collection with the City. (Anderson Dec., ¶ 3) It had only processed recyclables as a subcontractor to

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

NorCal. (*Id.*) Consequently, the other waste and recycling companies were more experienced and more experienced with dealing with the City. CWSs was not similarly situated to them.

In addition, the fact that the City awarded the contract to CWS shows that the City was not discriminating against CWS. Throughout the initial contract the City tried to work with CWS on many issues that CWS raised over the years, some covered by the Agreement, some outside of the Agreement (e.g. studying larger garbage carts to reduce contamination). (Anderson Dec. ¶¶ 7,8,9(a), (b), (c), (d); Rios Dec. ¶¶ 8,10,16,18, 23; Osmond Dec. ¶¶ 9, 11, Exs. A-D.) In 2017, the City amended the contract to provide CWS with additional compensation for large-item collection. (Taber Dec., Ex B.) Then in 2019, the City negotiated ahead of schedule, new and more favorable terms for CWS that corrected some of the issues that CWS had been complaining about for years. (Osmond Dec. ¶¶ 3,4,5,6,8; Taber Dec., Ex. C, § 2.3.2). In 2021, the City entered into a new 15-year agreement with CWS.

The history of the City's dealings with CWS does not support a claim of racial discrimination. The City worked within the Agreement to partner with CWS during the initial contract period then amended the Agreement two times to provide CWS with more favorable terms and eliminate some of the issues that CWS had complained about for years. CWS cannot create a triable issue of material fact to prove that the City intentionally discriminated against it. Thus, the City request that the Court grant judgment in its favor as to the Equal Protection cause of action on this basis.

### F. The California Constitution Equal Protection Claim Should Be Dismissed Because Such A Claim Does Not Allow For Individual Monetary Damages, The Only Relief Plaintiff Is Seeking For Its Equal Protection Claim.

The equal protection clause of the California Constitution does not afford litigants a right to recover individual monetary damages. *Gates v. Superior Court,* 32 Cal.App.4th 481, 521–525 (1995). Since this is the only relief Plaintiff seeks for its Fourth Cause of Action, the California Constitution portion of the claim should be dismissed.

## V.   CONCLUSION

For the reasons stated above, Defendant respectfully requests the Court grant summary judgment in Defendant's favor as to all of Plaintiff's claim.

*[Signature on following page]*

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753

Respectfully submitted,

Dated: November 7, 2025

NORA FRIMANN, City Attorney

By: /s/ Thomas J. Gray
THOMAS J. GRAY
Senior Deputy City Attorney

Attorneys for Defendant City of San Jose

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CITY OF SAN JOSE'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Case No. 3:23-cv-01647-MMC

2260753